UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IDALIA CRUZ, <br><br> Plaintiff, <br><br> v. <br><br> GRENADIER REALTY CORP., <br><br> Defendant. | Docket No. <br><br> **COMPLAINT** |

Plaintiff Idalia Cruz, by her undersigned attorneys, alleges as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff Idalia Cruz ("Ms. Cruz") is an indigent woman living with clinical/symptomatic HIV illness or Acquired Immune Deficiency Syndrome ("AIDS"). She is a client of the New York City HIV/AIDS Services Administration ("HASA") and at all relevant times was eligible for a HASA rental subsidy. In 2015, Ms. Cruz was denied an apartment by Defendant Grenadier Realty Corporation, the managing agent of over 40 rental properties in New York City, comprising over 22,000 individual apartments (hereinafter, "Defendant" or "Grenadier"), because of her disability and source of income (a HASA rental subsidy).

2.  In 2014, Ms. Cruz applied for a one-bedroom apartment with Defendant and disclosed that she was a HASA client. Defendant accepted Ms. Cruz's application and placed her on a waiting list. In December 2015, Defendant informed Ms. Cruz that Defendant was no longer accepting HASA clients, a decision made by Defendant's general office. Defendant later confirmed this with Ms. Cruz's case manager.

3.  Ms. Cruz contacted the Fair Housing Justice Center ("FHJC") for assistance. In March 2016, FHJC fair housing testers called Defendant's rental office to determine whether

Defendant treats prospective disabled renters with a HASA housing subsidy in a non-discriminatory manner.  FHJC testers confirmed that Defendant operates a blatantly discriminatory rental system.  Indeed, Defendant categorically refuses to rent to prospective renters living with AIDS and utilizing a HASA rental subsidy, flatly denying them apartments, in blatant violation of both the federal Fair Housing Act and New York City Human Rights Law.

## THE PARTIES

4.Plaintiff  Idalia Cruz is a 49-year-old, indigent woman living with clinical/symptomatic HIV illness or AIDS, and she is a client of HASA.  She is currently homeless and residing in Brooklyn, New York, in an emergency housing placement for HASA clients.

5.Defendant Grenadier Realty Corporation is a New York corporation located at 1230 Pennsylvania Avenue, Brooklyn, NY  11239.  Grenadier is the managing agent of over 40 rental properties in New York City, including properties in this District in the Coney Island area of Brooklyn, New York.

## JURISDICTION AND VENUE

6.This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613.  This Court has supplemental jurisdiction over the New York City Human Rights Law claims pursuant to 28 U.S.C. § 1367.

7.Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is located within this District in the State of New York, and all of the relevant acts took place in this District.

## BACKGROUND

**The Nature of AIDS and the Creation of HASA**

8. HIV is a virus that attacks the immune system and leaves the body unable to ward off infection and disease. As a result:

> People living with HIV and AIDS develop numerous illnesses and physical conditions not found in the general population, and experience manifestations of common illnesses that are much more aggressive, recurrent, and difficult to treat. Infections and cancers spread rapidly in a person whose immune system has been compromised, and the effectiveness of medicine is diminished by nutritional problems that limit the body's ability to absorb what is ingested. Illnesses that are not lethal to the general population can kill an HIV-infected person.

Henrietta D. v. Giuliani, 119 F. Supp. 2d 181, 185 (E.D.N.Y. 2000), aff'd, 331 F.3d 261 (2d Cir. 2003), cert. denied, 541 U.S. 936 (2004).

9. Individuals living with HIV progress from an asymptomatic stage to the development of symptoms such as weight loss, neuropathy, chronic diarrhea, and fatigue. Henrietta D., 191 F. Supp. 2d at 185. "Eventually, HIV and AIDS strip the body of all defenses, leaving the infected person unable to fend off or combat new and existing infection and illness. At this later stage of HIV infection, patients commonly develop 'opportunistic infections' such as PCP pneumonia, cryptococcal meningitis, and Kaposi's Sarcoma, diseases particular to persons with compromised immune systems. These illnesses and infections eventually cause death." Id.

10. Medication, including HIV medication, is essential to the health, wellbeing, and survival of a person living with clinical/symptomatic HIV illness or AIDS. Without adequate and stable housing, people living with AIDS ("PLWAs") find it extremely difficult to maintain their medication regimen, or even to properly store and refrigerate their nutritional supplements and the fresh, nutritional food that they desperately require. Id. at 186.

11. Indeed, there is an expression in the AIDS community: "Housing is healthcare." As a 2004 study commissioned by the New York City Mayor's Office on AIDS Policy Coordination concluded: "Homeless persons with HIV/AIDS face unusual health risks. They are thought to experience higher rates of morbidity and mortality than domiciled persons with HIV/AIDS, to face greater barriers to health care, and to be less likely to have access to and/or the supports necessary to comply with complex anti-HIV drug regimens. In New York City, homelessness or unstable housing has been found to be persistently associated with barriers to medical care, lower rates of service utilization, and poor adherence to complex treatment regimens." Hudson Planning Group, "An Assessment of the Housing Needs of Persons with HIV/AIDS, New York City Eligible Metropolitan Statistical Area," (New York 2004), at 42-43.

12. For PLWAs, homelessness and unstable housing are huge barriers to avoiding illness and infection, altering high-risk behaviors, and accessing mental health and other services that many PLWAs desperately require. "[H]ousing status has a direct, independent, and powerful impact on HIV incidence and on the health of people living with HIV/AIDS. Homelessness and unstable housing are consistently linked to greater HIV risk, inadequate HIV health care, poor health outcomes and early death. In fact, housing status is a stronger predictor of HIV health outcomes than demographics, mental health, substance use, or use of other services." Scott Skinner-Thompson, AIDS and the Law (6th ed. 2016), at 6-4 (citation omitted).

13. HASA was created in 1985 as a subdivision of New York City's Human Resources Administration in recognition of the fact that PLWAs have special needs in accessing and maintaining their social welfare benefits. To qualify for HASA during the times relevant to this case, a client was required to be indigent and living not merely with HIV, but with clinical/symptomatic HIV illness, or AIDS.

14. HASA clients in need of housing are responsible for their own search for a privately owned apartment within New York City. Once an apartment is located by a HASA client and approved by HASA, within the legally mandated time frame, the owner of the apartment is provided a direct-vendor check for HASA's portion of the first month's rent and a voucher for a security deposit equal to one-month's rent. By law, HASA clients such as Ms. Cruz, who at all relevant times received income via SSI, are required to pay only 30 percent of their income towards rent; HASA provides direct-vendor checks each month to pay the remainder of the clients' rent. In other words, Ms. Cruz receives income from SSI that is 40 times her monthly rental contribution, and HASA guarantees the remainder. The landlord receives the full market rent for the apartment in question.

15. New York City landlords familiar with the HASA program are aware of HASA's operating procedure and rules, as set forth in the preceding paragraph.

## FACTUAL ALLEGATIONS

**Defendant's Blatant Discrimination Against Ms. Cruz**

16. In April 2014, Ms. Cruz moved to New York, and after becoming a HASA client, she began to search for a one-bedroom apartment using her HASA subsidy. That same month, Ms. Cruz visited Defendant's rental office in the Coney Island area of Brooklyn. An employee at the office gave Ms. Cruz an application and instructed her to fill it out and mail it in. Ms. Cruz did so, applying for a one-bedroom apartment and checking the boxes of (i.e., applying for) all available properties on the list that Grenadier provided her.

17. In or about late May 2014, Defendant sent Ms. Cruz a notice indicating that she was on a waiting list for a studio apartment at Sea Rise I apartment complex in Coney Island, New York. Ms. Cruz immediately returned to Defendant's Coney Island office and spoke with

Keisha Mcpherson, an employee of Defendant. Ms. Cruz told Ms. Mcpherson that she had applied for a one-bedroom, not studio, apartment at any of Grenadier's properties, not just at Sea Rise I. Ms. Mcperhson told Ms. Cruz that not all of the Grenadier rental buildings accepted programs, and that some of the buildings were for "working" people. Ms. Mcpherson told Ms. Cruz to submit a new application specifically for HASA clients. Ms. Cruz filled out that new application in front of Ms. Mcpherson, indicating that she was a HASA client, and handed it to Ms. Mcpherson. Ms. Mcpherson told Ms. Cruz that there was a waiting list of one-and-a-half to two years. Ms. Mcpherson said that the rent for a one-bedroom apartment was $936 a month, which was well within the allowable rent for Ms. Cruz's HASA subsidy. (Ms. Cruz's HASA case manager informed her in April 2014 that HASA would approve a one-bedroom apartment with a rent of up to $1,200.) Ms. Cruz returned to the office a short time later to give Ms. Mcpherson the requested documentation.

18. In or about June 2014, Defendant sent Ms. Cruz a document indicating that she was now on the waiting list for a one-bedroom apartment.

19. In or about August 2014, an employee from Grenadier called Ms. Cruz to inform her that Defendant had apartments available. The employee stated that Defendant would call Ms. Cruz in the next month. Defendant failed to do so.

20. In or about October 2014, Ms. Cruz was no longer able to stay with family, and was rendered homeless. She called Ms. Mcpherson to inform her of her change of address and left a message. When Ms. Mcpherson called back, Ms. Cruz told her that she was now homeless and living in emergency housing provided by HASA. Ms. Mcpherson told Ms. Cruz that she would work on this for Ms. Cruz, and asked Ms. Cruz to give her a couple of months.

21.     Ms. Cruz waited another full year.  In or about October 2015, Ms. Cruz returned to Grenadier's office in Coney Island, where a different employee told her that Ms. Mcpherson was not in the office.  Ms. Cruz tried again a few weeks later, but was again told that Ms. Mcpherson was not in the office.

22.     Finally, on or about December 8, 2015, Ms. Cruz reached Ms. Mcpherson by phone to inquire about her application.  Ms. Mcpherson told Ms. Cruz that she remembered her and that she was still in line for an apartment.  But after a moment, during which she apparently consulted her computer, Ms. Mcpherson said, "Wait a minute, you're a HASA client."  When Ms. Cruz asked if that made a difference, Ms. Mcpherson replied that is made a "big difference," and that Defendant did not take HASA "anymore."  Ms. Mcpherson explained to Ms. Cruz that the general office directed employees not to accept HASA anymore.

23.     When Ms. Cruz asked if this new policy only excluded HASA, Ms. Mcpherson answered in the affirmative, confirming that this was the case.

24.     On or about December 9, 2015, Ms. Cruz informed her Housing Works case manager, Jessica Delbert, of the events in the preceding paragraphs.  That day, Ms. Delbert called Ms. Mcpherson and again inquired about the status of Ms. Cruz's application.  Ms. Mcpherson said that she had already explained this to Ms. Cruz, and confirmed that Grenadier was not taking HASA applicants.  Ms. Mcpherson explained that Defendant was accepting clients with other housing vouchers, including, for example, the Family Eviction Prevention Subsidy ("FEPS") and Section 8, but not HASA.  She told Ms. Delbert that the decision not to accept HASA was made by those above her, by management.

25.     As a result of this discrimination, Ms. Cruz remains homeless, despite a continued search for housing.  Her time in emergency housing has taken a toll on her health:  her T-cell

count, which should be between 1,000 and 1,500, dropped to 875 in March 2016 and into the 600s in October 2016. She has been placed on the fourth floor of a building with no elevator despite living with AIDS and several other maladies, including sleep apnea; asthma; neuropathy in her legs, hands, and feet; thyroid problems; and a 2013 stroke.

**FHJC Testing Investigation of Grenadier Realty Corp.**

26. In response to a request for assistance, FHJC conducted a testing investigation into Ms. Cruz' allegation that Defendant was not accepting applicants with a HASA rental subsidy.

27. As part of its testing investigation, on March 3, 2016, FHJC had a female tester call Defendant's leasing office. The tester spoke with a man named Joel Fuentes, who confirmed that Defendant had apartments renting for approximately $1,200 per month, with a waiting list of several years. Mr. Fuentes also said that it was free to apply and join the waiting list.

28. On Monday, March 7, 2016, FHJC had another female tester call Defendant's leasing office. The tester spoke with a male employee of Defendant, who confirmed there was a waiting list for Defendant's apartments. The second tester then stated that she had a HASA subsidy and asked if Defendant would accept it. The man said, "No." The second tester then asked, "Are you familiar with the HASA vouchers"? Defendant's employee responded, "Yeah, we are, but we don't take it." "You don't," the tester asked. "No," the employee again confirmed.

29. Hence, the FHJC test confirmed that Defendant categorically refuses to rent to all disabled HASA clients like Ms. Cruz who receive a HASA housing subsidy, which is a legal, governmental source of income.

**Disparate Impact of Defendant's Policy on People
<u>Living with Clinical/Symptomatic HIV Illness or AIDS</u>**

30. There are approximately eight million individuals residing in New York City, with an average of 2.6 persons per household.[1] There are presently approximately 78,000 individuals in New York City living with clinical/symptomatic HIV illness or AIDS, and approximately 36,000 of those individuals are clients of HASA.

31. At all relevant times, all HASA clients were required to be living with clinical/symptomatic HIV illness or AIDS, and thus all are living with a disability or a handicap as the terms are defined by the Fair Housing Act and New York City Human Rights Law.

32. The vast majority of HASA clients utilize a HASA housing subsidy. A person or household must first be qualified as a HASA client to obtain a HASA housing subsidy. Consequently, 100% of renters with a HASA housing subsidy are living with a disability or a handicap.

33. Defendant's policy <u>categorically rules out</u> all New York City residents who utilize a HASA housing subsidy.

34. Defendant's "no HASA" policy, accordingly, has an adverse impact on a subset of New York City residents living with a particular disability: clinical/symptomatic HIV illness or AIDS [hereinafter, "AIDS" for short]. Nearly one-half of all New York City residents living with AIDS (46%, or 36,000 out of 78,000) are adversely impacted – indeed, categorically excluded – by Defendant's policy of categorically refusing HASA subsidies, irrespective of the fact that such subsidies are paid directly by the City of New York. This is a vastly more significant adverse impact on those living with AIDS than other New York City residents, less

---

[1] New York City Consolidated Plan, Dec. 4, 2015, NA-1.

than 4% of whom utilize a housing subsidy or voucher, and none of whom are excluded by Defendant's policy to accept vouchers or subsidies other than HASA.[2]

**General Allegations**

35. As alleged in the foregoing paragraphs, Defendant intentionally and willfully discriminated against Ms. Cruz and acted with reckless disregard for the rights of Ms. Cruz.

36. Defendant's adoption of a "no HASA" policy, and Defendant's insistence upon that policy despite being on notice that the policy unfairly and categorically excludes disabled individuals who possess a housing subsidy from HASA, constitutes intentional discrimination based upon disability and lawful source of income.

37. Defendant's adoption of a "no HASA" policy, and Defendant's insistence upon that policy despite being on notice that its policy unfairly and categorically excludes disabled individuals who possess a housing subsidy from HASA, constitutes discrimination, by virtue of disparate impact, based upon disability and discrimination based upon lawful source of income.

38. By reason of the foregoing, Ms. Cruz was denied the opportunity to rent an apartment from Defendant.

39. By reason of the foregoing, Ms. Cruz has been injured by Defendant's discriminatory conduct and has sustained damages as a result of that conduct, including a loss of her civil rights, emotional distress, humiliation, embarrassment, and loss of housing opportunity.

40. At or before the commencement of this action, Plaintiff provided notice of this action to the New York City Commission on Human Rights and Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

---

[2] HPD and NYCHA Section 8 vouchers, along with LINC vouchers, constitute the vast majority of vouchers (or subsidies) available to New York City residents. See New York City Housing Authority, Housing Choice Voucher Program Demographics Report, June 5, 2015 and New York City Housing & Preservation Department, Section 8 General Program Indicators, February 2016.

## FIRST CLAIM FOR RELIEF
(Fair Housing Act:  42 U.S.C. § 3604(f)(1))

41. Plaintiff restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

42. The FHA provides that it is illegal: "To discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter" because of disability.  42 U.S.C. § 3604(f)(1).

43. Defendant illegally discriminated against Plaintiff by discriminating in the rental of, the negotiation for, or otherwise making unavailable or denying apartments for rent because of disability, including, but not limited to, refusing to accept Plaintiff's disability-based rental subsidy, and singling that subsidy out for categorical exclusion.

44. Defendant's conduct was willful, intentional, and in reckless disregard of Plaintiff's civil rights.

45. Ms. Cruz is an aggrieved person as defined by the FHA, 42 U.S.C. § 3602(i), and as a direct and proximate result of Defendant's unlawful discriminatory conduct has sustained damages.

46. Accordingly, under 42 U.S.C. § 3613(c), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
(Fair Housing Act:  42 U.S.C. § 3604(f)(2))

47. Plaintiff restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

48. The FHA provides that it is illegal: "To discriminate against any person in the terms, conditions, or privileges of the sale or rental of a dwelling" because of disability. 42 U.S.C. § 3604(f)(2).

49. Defendant illegally discriminated against Plaintiff by discriminating in the terms or conditions or renting an apartment because of disability, including, but not limited to, requiring Plaintiff to complete a different application form, limiting consideration of Plaintiff's application to certain building(s), refusing to consider Plaintiff's rental application and removing Plaintiff from a waiting list because of her disability-based rental subsidy, and singling that subsidy out for categorical exclusion.

50. Defendant's conduct was willful, intentional, and in reckless disregard of Plaintiff's civil rights.

51. Ms. Cruz is an aggrieved person as defined by the FHA, 42 U.S.C. § 3602(i), and as a direct and proximate result of Defendant's unlawful discriminatory conduct has sustained damages.

52. Accordingly, under 42 U.S.C. § 3613(c), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs

### THIRD CLAIM FOR RELIEF
(New York City Human Rights Law:  Disability Discrimination)

53. Plaintiff restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

54. Defendant is the owner of housing accommodations and/or the managing agent of housing accommodations and/or has the right to approve the rental of housing accommodations located in New York City as defined by Section 8-102(10) of the New York City Administrative

Code to include "any building . . . which is used or occupied . . . as the home, residence or sleeping place of one or more human beings."

55. Section 8-107(5)(a) of the New York City Administrative Code provides that it shall be "an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignees, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation . . . (1) To refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any person or group of persons such a housing accommodation . . . because of the actual or perceived . . . disability . . . of such person or persons. . . ." Subsection (2) of section 8-107(5)(a) provides that Defendant cannot "discriminate against any person because of such person's . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith."

56. Defendant violated Section 8-107(5)(a)(1) and (2) by discriminating against Plaintiff in the rental of housing accommodations in the various ways set forth *supra*, including, *e.g.*, by refusing to rent, denying, and/or withholding apartments for rent because of disability, and by discriminating in the terms, conditions, or privileges of the rental of housing accommodations based on disability.

57. Defendant's conduct was willful, intentional, and in reckless disregard of the Plaintiff's rights.

58. Ms. Cruz is an "aggrieved person," as defined in the New York City Administrative Code, § 8-502(a), and has suffered damages as a direct and proximate result of Defendant's discriminatory conduct.

59. Accordingly, under New York City Administrative Code §§ 8-502(a) and (g), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
(New York City Human Rights Law: Source of Income Discrimination)

60. Plaintiff restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

61. Defendant is the owner of housing accommodations and/or the managing agent of housing accommodations and/or has the right to approve the rental of housing accommodations located in New York City as defined by Section 8-102(10) of the New York City Administrative Code to include "any building . . . which is used or occupied . . . as the home, residence or sleeping place of one or more human beings."

62. Section 8-107(5)(a) of the New York City Administrative Code provides that it shall be "an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation . . . (1) To refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any person or group of persons such a housing accommodation" because of lawful source of income. Subsection (2) of section 8-107(5)(a) provides that Defendant cannot "discriminate against any person because of . . . any lawful source of income of such person . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith."

63. Defendant violated Section 8-107(5)(a) by discriminating against Ms. Cruz in the rental of housing accommodations in various ways set forth *supra*, including, *e.g.*, by refusing to

rent, denying, and/or withholding apartments for rent because of lawful source of income, and by discriminating in the terms, conditions, or privileges of the rental of housing accommodations based on lawful source of income.

64. Defendant's conduct was willful, intentional, and in reckless disregard of Ms. Cruz's rights.

65. Ms. Cruz is an "aggrieved person," as defined in the New York City Administrative Code, § 8-502(a), and has suffered damages as a direct and proximate result of Defendant's discriminatory conduct.

66. Accordingly, under New York City Administrative Code §§ 8-502(a) and (g), Ms. Cruz is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

(a) Declaring that Defendant's discriminatory practices violate the FHA and the New York City Administrative Code § 8-107 *et seq.*;

(b) Enjoining Defendant, Defendant's agents, employees, and successors, and all other persons in active concert or participation from:

　(i) Denying or withholding housing, or otherwise making housing unavailable on the basis of disability or lawful source of income;

　(ii) Discriminating against any person in the terms, conditions, or privileges of rental of a dwelling because of disability or lawful source of income; and

　(iii) Aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by the New York City Human Rights Law; and

      (iv)    Coercing, intimidating, threatening, or interfering with any person, including Ms. Cruz, in the exercise or enjoyment of any right granted by the FHA.

(c)    Enjoining Defendant and its agents, employees, successors, and all other persons in active concert or participation to:

      (i)    Make all necessary modifications to rental policies, practices, and procedures to comply with fair housing laws, including providing information about and showing apartments to prospective renters, providing and processing applications, and maintaining waiting lists, on an equal basis without regard to disability and lawful source of income;

      (ii)    Adopt a written fair housing policy and distribute it to all staff, tenants, and rental applicants;

      (iii)    Instruct all current and future management, agents, and employees on fair housing laws and Defendants' policies, including by requiring attendance at fair housing training, conducted by a third-party acceptable to the Plaintiff and at Defendant's expense, which shall be attended by Defendant's owner and all employees whose job duties relate to the rental of apartments;

      (iv)    Display an Equal Opportunity logo (or statement to that effect) on all advertisements for rental property and display fair housing posters in all offices;

   (v) Notify New York City organizations assisting prospective renters using a HASA subsidy that Defendant has adopted non-discriminatory rental policies;

   (vi) Allow monitoring of Defendant's advertising, apartment availabilities, showing of apartments, application process, waiting lists, and rental decisions for multiple years;

   (vii) Retain records to allow for appropriate monitoring; and

   (viii) Establish a system so that Defendant's employees and agents can be tested for unlawful discriminatory practices for multiple years.

 (d) Awarding such damages to Plaintiff as will fully compensate her for any loss of rights, as well as for the emotional distress, humiliation, embarrassment, and lost housing opportunity suffered due to Defendant's discriminatory conduct;

 (e) Awarding punitive damages to Plaintiff;

 (f) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

 (g) Granting Plaintiff such other and further relief as may be just and proper.

DATED: Brooklyn, NY
    January 12, 2017

        Respectfully submitted,

        EMERY CELLI BRINCKERHOFF & ABADY LLP

        By: /s/ Diane L. Houk
        DIANE L. HOUK (DH 5202)
        600 Fifth Avenue, 10th Floor
        New York, NY 10020
        (212) 763-5000 (phone)
        (212) 763-5001 (fax)
        dhouk@ecbalaw.com

HOUSING WORKS, INC.


By: ARMEN H. MERJIAN (AM 3985)
81 Willoughby Street, 5th Floor
Brooklyn, NY 11201
(718) 408-6502 (phone)
(212) 989-8660 (fax)
merjian@housingworks.org

GEOFFREY L. WERTIME (GW 8891)
81 Willoughby Street, 5th Floor
Brooklyn, NY 11201
(718) 408-6513 (phone)
(212) 989-8660 (fax)
g.wertime@housingworks.org

*Attorneys for Plaintiff Idalia Cruz*